Tyrone J. SPEVACEK, Appellant,

v.

James E. WRIGHT, Appellee.

No. 85–1579.

District of Columbia Court of Appeals.

Submitted June 17, 1986.

Decided Aug. 6, 1986.

Julio C. Trujillo, Washington, D.C., was on brief, for appellant.

No brief was filed and no appearance was entered for appellee.

Before PRYOR, Chief Judge, and TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

In this reciprocal child support proceeding, appellant, a minor child, appeals from an order denying his motion to allow him to serve process by publication on appellee, his father, by posting notice in the Clerk's

Office of the Family Division of the Superior Court. He argues that the trial court erred in concluding it had no power to order substituted service of process in a reciprocal support proceeding. We hold that the trial court was correct and affirm its order.

I

Appellant, who is now nine years old, lives with his mother in the Federal Republic of Germany. In April 1983 he filed a petition against appellee Wright[1] in the Superior Court[2] under the Uniform Reciprocal Enforcement of Support Act (URESA), D.C. Code §§ 30–301 through 30–324 (1981).[3] The action was brought in the District of Columbia because there was reason to believe that Wright was then living in the District. Appellant and his mother had last visited James Wright in 1977 at Wright's mother's house in the District. In addition, in response to an inquiry, the German Institute of Guardianship had received a letter in 1981 from a District of Columbia government agency verifying that Wright still resided with his mother at her address on Newton Place, N.W.

After the petition was filed, the court appointed local counsel for appellant. Counsel made extensive attempts to find Mr. Wright and serve process on him personally. Several times counsel tried to serve him at his mother's address on Newton Place, but ultimately he was told that Wright's mother had died and that Wright no longer lived there. After locating an aunt of Mr. Wright and learning that his father lived in Durham, North Carolina, counsel attempted to serve him there or to ascertain Wright's whereabouts from his father, but in all of these endeavors counsel was unsuccessful.

Counsel then moved the trial court to authorize him to make constructive service on Mr. Wright by posting the URESA petition in the Clerk's Office, or in any other manner that the court might deem appropriate, and to waive the newspaper publication requirement. The court denied the motion on the ground that it did not have the power to order constructive service in a URESA proceeding. This appeal followed.

II

Superior Court Domestic Relations Rule 401(b) governs the service of process in URESA proceedings in which the District of Columbia is the responding jurisdiction, such as the case at bar. Paragraph 1 of the rule provides that service in URESA cases "shall be had as provided in Rule 4(a)(2) of these Rules."[4] Subsection (a)(2) of Rule 4 states that service must be effected either by the United States Marshal or by a special process server "as provided herein" (i.e., in other parts of Rule 4).[5]

---

1. In December 1976, only a few months after appellant was born, Wright acknowledged in an affidavit that he was appellant's natural father.

2. The proceedings below were brought by Walter Zarbock, Director of the German Institute for Guardianship in Heidelberg, on behalf of the Youth Welfare Office of the Town of Hamm. That office had initiated an action in Germany on behalf of appellant. If relief were ultimately granted as requested in the petition, the German Institute for Guardianship would be authorized to receive any support payments.

3. The petition stated that the Federal Republic of Germany "has a substantially similar reciprocal law concerning the enforcement of support...." A summary of the applicable West German law, including pertinent statutory provisions both in German and in English translation, was attached to the petition.

4. Super.Ct.Dom.Rel.R. 401(b)(1) provides:
 *Jurisdiction of defendant.* Jurisdiction of the defendant is obtained by service upon him of a Notice of Hearing and Order Directing Appearance, together with a copy of a petition or complaint and supporting documents forwarded by the initiating jurisdiction and filed in [the Family] Division of the Court. Service shall be had as provided in Rule 4(a)(2) of these Rules.

5. Super.Ct.Dom.Rel.R. 4(a)(2) provides:
 *Notice of hearing and order directing appearance.* Cases in which a civil action is initiated by petition, a notice of hearing and order directing appearance, with copies for

Subsection (d) of Rule 4 provides that in cases within Rule 4(a)(2), such as URESA proceedings, "service shall be made upon a defendant or other person by delivering to him personally a copy of the petition and notice of hearing and order directing appearance ... unless otherwise ordered by the Court upon a showing of good cause." The rule goes on to state precisely how personal service must be made.[6] Thus, under the Superior Court rules, service of a URESA petition must be made personally upon the defendant, a person of suitable age at the defendant's dwelling house or usual place of abode, or an authorized agent, "unless otherwise ordered by the Court upon a showing of good cause."

■ Appellant argues that because he made a "showing of good cause," the trial court had the power to order constructive service by publication.[7] We hold that the trial court did not have such power. "[N]otice by publication, being in derogation of the common law, can be availed of only when a statute permits." *Cooper v. Burton,* 75 U.S.App.D.C. 298, 299, 127 F.2d 741, 742 (1942) (citations omitted); *accord, Zeig v. Zeig,* 65 Nev. 464, 485, 198 P.2d 724, 734 (1948); *see Sununu v. Clamshell Alliance,* 122 N.H. 668, 672, 448 A.2d 431, 434 (1982); 62 AM.JUR.2D *Process* § 66, at 846 (1972); 72 C.J.S. *Process* § 54, at 1067–1068 (1951); *cf. Craig v. Heil,* 47 A.2d 871, 872 (D.C.1946) ("registered mail may only be employed as a means of serving process when specifically authorized by law"). No statute or rule of court in the District of Columbia applicable to URESA proceedings permits constructive service of process by publication.

■ Appellant maintains that the court has the necessary power under D.C.Code § 13–336 (1985 Supp.), D.C.Code § 30–314 (1981), and *In re E.S.N.,* 446 A.2d 16 (D.C. 1982). We cannot agree. Section 13–336 authorizes service by publication only in eight enumerated types of cases.[8] It does

each named defendant or individual whose attendance is otherwise required, shall be filed with the Clerk. A notice of hearing and order directing appearance shall bear the name and seal of the Court and the title of the action. It shall command the person to whom it is directed to appear on a date and at a time specified therein. The Clerk shall set the matter for hearing and deliver all such notices for service to the Marshal or to the petitioner for service by special process server as provided herein.

6. Super.Ct.Dom.Rel. R. 4(d) provides in pertinent part:

 *Summons: Personal service.* In cases within Rule 4(a)(2) and (3) above, service shall be made upon a defendant or other person by delivering to him personally a copy of the petition and notice of hearing and order directing appearance ... unless otherwise ordered by the Court upon a showing of good cause. The petitioner shall furnish the person making service with the necessary copies of the petition.... Service shall be made as follows:

 (1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the [petition and notice of hearing] to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the [petition and notice of hearing] to

an agent authorized by appointment or by law to receive service of process.

7. The trial court ruled that if it had the power to order constructive service in a support proceeding, it would allow appellant to use "some form of substituted service to obtain jurisdiction over Mr. Wright." In other words, the court apparently was of the view that appellant had made a "showing of good cause" under Rule 4(d). On the facts of this case, we agree. *See Bearstop v. Bearstop,* 377 A.2d 405, 408–410 (D.C.1977).

8. D.C.Code § 13–336 (1985 Supp.) provides:

 (a) In actions specified by subsection (b) of this section, publication may be substituted for personal service of process upon a defendant who can not be found and who is shown by affidavit to be a nonresident, or to have been absent from the District for at least six months, or against the unknown heirs or devisees of deceased persons.

 (b) This section applies only to:

 (1) actions for partition;

 (2) actions for divorce or annulment;

 (3) actions for child custody under D.C. Code, title 16, chapter 45;

 (4) actions by attachment;

 (5) actions for foreclosure of mortgages and deeds of trust;

 (6) actions for the establishment of title to real estate by possession;

 (7) actions for the enforcement of mechanics' liens, and other liens against real or personal property within the District; and

not provide for service by publication in URESA cases or in any other kind of support proceeding independent of a divorce action or a custody action.

 Nor does section 30–314 provide the necessary authority. It empowers the court to refer URESA cases "to the Corporation Counsel, or to private counsel, if appropriate, for such further action as may be necessary to obtain jurisdiction of the defendant in order to carry out the provisions of this chapter [URESA]," but it does not provide for a specific method of service.[9] Since substituted service is in derogation of the common law, statutes purporting to authorize constructive service by publication must be strictly construed. *Zeig v. Zeig, supra,* 65 Nev. at 485, 198 P.2d at 734; 62 AM.JUR.2D *Process* §§ 66, 68 (1972); 72 C.J.S. *Process* § 55 (1951); *see Craig v. Heil, supra,* 47 A.2d at 872 ("process can only be served as provided by statute or by rules adopted pursuant to statute"); *Benitez v. Anciani,* 127 F.2d 121, 126 (1st Cir.1942) ("In the matter of service, it is essential that there be strict observance of the statute"), *cert. denied,* 317 U.S. 699, 63 S.Ct. 439, 87 L.Ed. 559 (1943); *A & S Manufacturing Co. v. Wetzler,* 110 N.J.Super. 565, 266 A.2d 316, 317

(1970). Because section 30–314 does not expressly or by clear implication authorize any kind of substituted service, it is of no help to appellant.

Finally, appellant's reliance on *In re E.S.N., supra,* is misplaced. In that case, an action to terminate a parent-child relationship alleging neglect on the part of the parent, both D.C.Code § 16–2357 (1981) and Super.Ct. Neglect R. 14(a)(1) gave the Superior Court the power to use constructive service in a neglect proceeding. *See In re E.S.N., supra,* 446 A.2d at 17–18. No similar statute or rule exists for URESA proceedings.

Thus the trial court was entirely correct when it ruled that it lacked authority to order constructive service by publication in a URESA proceeding. The order from which this appeal is taken is therefore

*Affirmed.*

(8) actions that have for their immediate object the enforcement or establishment of any lawful right, claim, or demand to or against any real or personal property within the jurisdiction of the court.

9. D.C.Code § 30–314 (1981) provides in pertinent part:

(a) When the Court receives from the court of an initiating state certified copies of a complaint or other proceedings containing the essential allegations of a complaint, under whatever name it may be known, and a certificate similar to that required by § 30–310, it shall docket the cause and refer the matter to the Corporation Counsel, or to private counsel, if appropriate, for such further action as may be necessary to obtain jurisdiction of the defendant in order to carry out the provisions of this chapter.